## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

BROWN v. BROWN.

July 26th, 1883.

1. JOINT PURCHASERS—*Conveyance to one—Resulting trust.*—Where two persons jointly purchase land under parol contract, one of them cannot take a conveyance thereof to himself, and thereby defeat the rights of his co-purchaser, on the plea that the contract between them and their vendor was not in writing. The grantee holds the legal title in trust for the benefit of himself and his co-purchaser.

2. IDEM—*Idem—Idem—Case at bar.*—In 1863, J. B., Sr., conveyed to G. a tract of land, reserving ore bank, &c. In 1866, he sold, but did not convey, to his sons, J. B., Jr., and A. B., an adjoining tract, called "Furnace," and the ore bank, &c. In 1869, he conveyed to his sons jointly, " Furnace," but by oversight, did not include the ore bank, &c. These joint purchasers continued in joint possession of all this property—A. B. admitting the joint interest of J. B., Jr., until after their father's death in 1880, when A. B. having obtained a deed therefor in 1872, from their father, claimed to be the sole owner. Of this deed J. B., Jr., had no notice till after his father's death. A. B. sold the ore bank, &c. to G. who sold same to P., who took possession and proceeded to work it.

HELD :

    1. The statute of frauds does not apply to this case.

    2. If it did, there was sufficient part performance to take the case out of that statute.

    3. A. B. holds the legal title in trust for the benefit of himself and J. B., Jr.

Appeal from decree of circuit court of Washington county, rendered 15th February, 1883, in the cause of James Brown, Jr., against Abram Brown and others. In 1866, James Brown, Sr., conveyed to William M. Gray a tract of land in said county, reserving an iron ore bank, &c., therein. In 1866 he sold by parol an adjoining tract and the ore bank, &c., to his sons, James

Brown, Jr., and Abram Brown, and gave them possession. In 1869 he conveyed to his sons the Furnace tract, but by oversight, did not embrace the ore bank, &c. The sons continued in joint possession of all the property, Abram admitting the joint interest of his brother until their father died in 1880, when Abram, having got a deed for the ore bank, &c., from his father in 1872, claimed to be the sole owner. Of this deed, James had no notice till after his father died. Abram sold the ore bank to Gray, and Gray sold same to Francis Preston, who took possession and proceeded to work it. James filed his bill in said court in 1881, alleging these facts and fraud in the procurement of the deed to Abram, and that Gray and Preston knew of his joint interest, and had received no conveyances. The defendants pleaded the statute of fraud, alleging that the contract between the father and the sons was not in writing, and answered, denying the allegations of the bill, but offered no proof. Plaintiff, supported by proof all his allegations, and moreover, proved that Abram had admitted many times the joint interest of the plaintiff; that they had twice jointly made conditional sales of the property ; that their father had admitted that the property belonged to his sons, and that it had been omitted by oversight from the conveyance to them of the Furnace tract; and that Abram had gone to his father's house avowedly to get a joint deed to himself and the plaintiff at the time he got the deed to himself alone.

At the hearing, the court dismissed the bill with costs. James Brown, Jr., appealed to this court.

*White & Buchanan,* for the appellant.

The attention of the court is called especially to the following points :

First. Evidence of joint purchase and ownership. See B. G. Cole's deposition, Susannah Cole, parties present when land was bought, and James Brown, appellant.

Second. The admissions and declarations of the father, James Brown, that it was the joint property of the sons. John M. Vanhuss, John G. Clark, Fleming Mays, declarations of Wm. M. Gray.

Third. Abram Brown's admissions by his words and his actions; proving joint ownership; T. A. Denton, A. Baumgardner, F. Mays, T. J. Morton, James Brown, C. J. Kingsolver.

Fourth. Evidence of Gray's knowledge of joint ownership. His statement to A. Baumgardner, to P. Baumgardner. His effort to buy ore bank and road, and James' permission to him to erect gates.

Fifth. Evidence of fraud committed by Abram. His admissions that it was joint property after he had received the deed.

His efforts to sell it as joint property after he had received the deed. No consideration paid for ore bank when deed to himself was procured.

His undertaking to procure legal title to ore bank for James and himself. The concealment of his pretended purchase from James. Bigelow on Fraud, page 274, section1 7; Waterman on Spec. Per., sec. 335; *Wellford* v. *Chancellor*, 5 Gratt. 39.

Sixth. Possession. In joint sale of two tracts, possession of one is possession of both. 2 Lomax Dig. 53 (side, 42); 2 Minor's Inst. 907 (1st edi.); *Smith* v. *Underdunk*, 1st Sand. 579.

Seventh. Gray is not a purchaser for value without notice. He exhibits no deed, and neither states or proves the consideration.

*Campbell & Trigg,* for appellees.

The object of the bill is to correct an alleged mistake or omission, and for other relief. It is a parol contract for the sale of real estate. The appellees rely on the statute of frauds and perjuries, Code of Virginia, 1873, chapter one hundred and forty, section one, sixth clause. The appellant cannot recover because he claims against the law of the land.

If the appellees choose to avail themselves of the statute of frauds, it is not necessary that they should *confess* or *deny* the agreement, as, in either event, the statute protects them. *Givens* v. *Calder*, 2 Des., S. C., 2 American Decisions, 687, 691 ; *Rowton* v. *Rowton*, 4 H. & M. 92–110; Story's Equity Pleadings, section 763; Mitf. and Ty. Pl. and Pr. in Equity, 355, and note 2; *Cooth* v. *Jackson*, 6 Ves. 17, 39; *Blagden* v. *Bradbear*, 12 Ves. 471; *Heth's executor* v. *Wooldridge*, 6 Rand. 609, citing and approving above cases.

Has there been such a part performance of the parol agreement as ought to estop the appellees to rely upon the statute of frauds and perjuries? On this point the only contention of the appellant is possession by the vendees of the ore bank. This is positively denied in the answer of appellees. When possession is relied on as part performance, it must appear that it was delivered and taken in pursuance of the parol agreement. *Wright* v. *Puckett*, 22 Gratt. 370–374.

The vendees must *take* possession under and because of the contract. *Pierce* v. *Catson*, 23 Gratt. 598; 2 Min. Inst. 855, 856. Possession being denied by the defendants must be proved by clear and satisfactory evidence, and in considering the evidence the rule obtaining in criminal cases must be observed. *Carter* v. *McArtor*, 28 Gratt. 360; *Lea* v. *Eidson*, 9 Gratt. 275; Adams' Equity, 171; Story's Equity, section 157. The evidence is contradictory, the statute of frauds ought especially to apply. *Rowton* v. *Rowton*, 4 H. & M. 92. There is no such proof in this instance.

In the absence of such proof parol testimony cannot be considered, because a court of equity, no more than a court of law, can disregard the statute of frauds where part performance is alone relied on and not proved. In this case, where the statute requires the agreement to be written, where, as we contend, the agreement is in parol, where there has been no part performance, where the statute of frauds is relied on, where the existence of the agreement is denied in the answer, can the *plaintiff*

prove the agreement by parol testimony, thus establish the mistake, thus show that the mistake is a failure to convey two separate and disconnected parcels of land sold by separate and distinct contracts in one and the same deed, and thus have the agreement reformed and relief granted to him pursuant to the reformed agreement? Relief by reforming and performing with the parol variation never granted in such a case. Adams' Equity, 171, 172. *Woollam* v. *Hearn*, 3 Wh. Tu. Leading Cases in Equity, 404.

The notes to this case present the authorities on both sides, and the English and American annotators approved the decision in the principal case, (413). Am. Notes, top page 684, 5, 6, 7. The note at page 687 is especially applicable to the case at bar.

See a review of most of the American cases, in an exhaustive opinion of the supreme court of Massachusetts, delivered by Judge Wells, 102 Mass. 24; S C. 3 Am. R. 418, 424, 426, 434. The rule, as laid down in *Adams & Woollam* v *Hearn*, is approved and acted on, and the opinion concludes: "This rule applies as well to the enforcement of such an agreement by way of rectifying a deed, as to a direct suit for its specific performance. We are satisfied, also, that this is the rule to be derived from a great preponderance of the authorities."

The precise question has not been decided in Virginia, but as far back as *Anderson* v. *Anderson*, 2 Call, 205, it was declared that courts of equity, equally with courts of law, must consult the intention of the legislature. We submit that in this case parol testimony cannot be considered, and this appeal must be dismissed.

In no just sense is there a mistake in the deed. It does all it purports to do. It conveys the title of the vendor in the "Furnace tract" to the vendees. James Brown, Jr., alleges that the "mineral interest" was, by oversight and mistake, not conveyed. Abram Brown denies this; denies that James Brown, Sr., sold the "ore bank"; denies that he intended to convey it.

Not conveying both parcels was not a mistake, because the

contracts of sale, as appellant states in his deposition, were separate and distinct, and appellant nowhere states that any contract required that both parcels should be embraced in the same deed. Kerr on Fraud and Mistake, p. 408.

The appellant sets out what he says was the contract, page 6. He must prove it as he alleges it, and it must be certain and defined. 2 Lomax Dig. (52); *Wright* v. *Puckett*, 22 Grat. 374; *Leigh* v. *Haverfield*, 5 Ves. 452, 457; *Harnett* v. *Yielding*, 2 Sch. & Lefr. 549; *Cooth* v. *Jackson*, 6 Ves. 12, 23; *Swope* v. *Chambers*, 2 Gratt. 319, 324; *Mundy* v. *Vawter*, 3 Gratt. 518, 554; Daniel's Ch. Pr. 324, note 8; 326–7, note 6; *Phillips* v. *Thompson*, 1 John. Ch. R. 131; *Parkhurst* v. *Van Cortlandt*, 1 John. Ch. R. 273.

The appellant sets out one contract in his bill—so he claims it to be. His witnesses, B. G. Cole and Susanna Cole, prove another. These are contradicted by two others of his witnesses, Jacob Brown and Patty Brown. And the appellant, in his deposition, contradicts his bill and witnesses.

The following material differences are pointed out: 1. The bill shows one contract; the deposition shows two. 2. The bill shows one consideration or price for both parcels; the deposition shows two—one consideration or price for one parcel, and another for the other parcel. 3. The bill shows that James Brown, Sr., the vendor, by the same act, by one and the same agreement, disposed of both parcels for a single consideration of $300; the deposition shows that after the contract for the Furnace tract had been completely agreed on, James Brown, Sr., the vendor, declared that the "ore bank at Gray's *belongs to me*"; and then proceeded to contract the ore bank for a wholly different consideration.

The application for relief has been unreasonably delayed. The deed was made in 1869. The plaintiff testifies that he knew of it in the lifetime of the vendor, James Brown, Sr. The presumption is, in the absence of evidence, that he knew it recently, if not immediately after the execution of the deed.

The vendor lived some ten or eleven years after, and visited and was visited by the plaintiff; yet the suit was not brought until 1881, and after the death of the vendor. *Carter* v. *McArtor*, 28 Gratt. 364; Kerr on Fraud and Mistake, 435–6.

But the plaintiff, after he discovered the mistake, was told by the vendor that he would make a separate deed for the ore bank. The plaintiff seems to have been satisfied with the declaration. He thereby acquiesced in the act of the vendor conveying the Furnace tract, and accepted the deed, which he now objects to, a complete and perfect deed, and waived his right to assail it. Gray is a complete purchaser for valuable consideration without notice of plaintiff's claim. Such a purchaser is entitled to the peculiar favor and protection of a court of equity. 2 Sugden on Vendors, page 1015; *Carter* v. *Allen*, 21 Gratt. 246–7; *Zollman* v. *Moore*, 21 Gratt. 320–1–2. The evidence offered to prove notice is unsatisfactory, and of a class that is always received with caution. A complete purchaser without notice will take a good title even when claiming through or under parties affected with notice. 1 Mat. Dig. 558, and cases cited.

The first ground of error assigned by appellant, it is presumed, is designed to raise the question of resulting trust. It cannot avail him, because it is neither charged in the bill nor proved that "the property was conferred upon, and accepted by Abram Brown for the benefit of himself and appellant." Adams' Eq. 27. Nor is it shown that appellant paid one cent of purchase money. Story's Eq., section 1,201, section 1,201 a. The payment of the purchase money by appellant should appear "*by clear and unquestionable*" testimony. *Phelps* v. *Seely*, 22 Gratt. 589; *Cook* v. *Fountain*, 3 Swans. 591–2. Where there is no payment of purchase money, the Statute of Frauds expressly applies. Story's Eq., section 1,201 a.

The appellant, in his petition to this court, abandons the ground taken in his bill, and thereby it is insisted, surrenders his case. The bill is based on the mistake of the vendor; the

petition on the fraud of one of the vendees. Fraud is nowhere charged in the bill. It is a bill to correct the alleged mistake of the vendor, or it is nothing.

The act complained of is the "omission" of James Brown, Sr., to convey the ore bank, yet neither James Brown's heirs nor representatives are before the court.

FAUNTLEROY, J., delivered the opinion of the court:

The appellant, James Brown, filed his bill in the circuit court of Washington county at the September rules, 1881, against Abram Brown, William M. Gray and Francis Preston, alleging that, in the year 1863, James Brown, Sr., sold a tract of land in said county to William M. Gray, and conveyed the same to him with an express reservation of an iron ore bank and the mineral on said land, and the right of access to it. That, in 1866, the said James Brown, Sr., sold another adjoining tract (upon which there was a furnace for the manufacture of iron), and the said iron ore bank and mineral reservation to the complainant, the said James Brown, and Abram Brown jointly, and put them in possession of the said property under and in pursuance of the said contract. In 1869 the said James Brown, Sr., executed a deed to the said James Brown and Abram Brown for the said "Furnace tract," but through oversight failed and omitted to convey in said deed the said ore bank and mineral reservation and right of way. That the said James Brown and Abram Brown held and exercised ownership and possession of, in, and to said property under their said contract of purchase, for a valuable consideration, from the time of their contract with their father down until after the death of their father, the said James Brown, Sr., in the spring of the year 1880; the said Abram Brown never denying, but always admitting, by word and act, that they, the said James Brown and Abram, were the joint owners of the ore bank and mineral reservation, as

well as of the Furnace tract. That after the death of the said James Brown, Sr., the said Abram Brown claimed that the said James Brown had no interest in the said iron ore bank and mineral reservation, and that he had obtained a deed for them to himself alone from their father, the said James Brown, Sr., in 1872. That he, the said James Brown, had no notice of the said deed to the said Abram Brown, or that he claimed more than a joint half interest in said iron ore bank and mineral interest until the spring of 1880, and after the death of their father, the said James Brown, Sr. That the said Abram Brown claimed to have sold the said iron ore bank and mineral interest to the said William M. Gray, and he, Gray, claimed to have made a conditional sale of the same to Francis Preston, but the bill of complaint charged that the transactions between William M. Gray and Francis Preston were incomplete and without consideration, and that they both had full notice and knowledge of the said James Brown's joint ownership and interest in the said premises.

The bill of complaint charged that the said Abram Brown held the legal title of the said ore bank and mineral interest for the benefit of himself and the said James Brown jointly and equally, and prayed for relief—specific and general; and the bill charged fraud in the procurement of the deed by the said Abram Brown to himself alone, and in the concealment by him of his pretended purchase and possession of a deed for the said property until after the death of their said father, James Brown, Sr.

The said defendants demurred to the bill, pleaded the statute of fraud, and filed their answer denying the allegations of the bill, and claimed that they were, each and all, purchasers for value without notice. They took no proof, but relied upon their said answer. The complainant, James Brown, proved that James Brown, Sr., sold the iron ore bank and mineral reservation interest to himself and the said Abram Brown jointly, at the same time, and by the same contract, that he sold to them the

said Furnace tract of land; that they paid therefor a valuable consideration, as agreed upon; that they went into possession of and held and exercised ownership over said property under their said contract; that Abram Brown admitted over and over again, through a long series of years, that the said property was owned jointly by himself and the said James Brown; that they had twice conditionally sold it as joint property; that the said Abram Brown undertook to get a deed for it, jointly, from their said father, and went for that avowed purpose to Wise county, where their father, the said James Brown, Sr., resided; and that all the denials of the said answer were untrue. That James Brown, Sr., always, after said contract, stated and repeated that the said property belonged to his said two sons—Abram Brown and James Brown; that it was a mere oversight that it was not conveyed by the deed conveying the Furnace tract, and that both vendor and vendees so understood and declared; that the complainant always claimed his interest in and to the said property, and exercised ownership over it, and never knew or suspected that Abram Brown claimed to own the whole, or had obtained a deed therefor until 1880, after their said father's death, when Abram Brown, for the first time, denied the right and joint interest of the said James Brown; that the said Wm. M. Gray had full notice and knowledge of the right and interest of the said James Brown before he (said Gray) bought the said property, for which he had neither paid the purchase money nor received a deed, and that the said Francis Preston had only purchased conditionally, and had paid no purchase money and received no conveyance.

Upon these facts, all disclosed by the transcript of the record in the case, and most abundantly proved by numerous witnesses, as well as by the acts and admissions of the appellees themselves, we think the circuit court of Washington county *erred* in refusing the relief prayed for in the bill, and in dismissing the said bill with costs by the said decree of February 15th, 1883.

This decree of the court below deprived the appellant, James Brown, of valuable property, which, in law and equity, belonged to him, and shields and consecrates the gross fraud perpetrated by Abram Brown upon both his aged father and confiding brother, in obtaining the legal title to said property, and attempting, both by concealment and false suggestion, to hold it exclusively for his own benefit, when he knew and admitted that it belonged jointly and equally to his brother, James Brown, the appellant. The circuit court of Washington county should have granted the relief prayed for, and thus have prevented the consummation of the fraud.

The statute of frauds was enacted for the purpose of preventing fraud, and it cannot be pleaded successfully in a case like this. One of the two joint purchasers or vendees cannot take a conveyance to himself for the property, and thereby defraud his co-purchaser by the plea that there was no contract in writing between them and their vendor, and that the contract was therefore void; and even if the statute could apply in this case, the record shows such *part performance* of the verbal contract as to take it out of the operation of the statute.

We are of opinion that the decree of the circuit court of Washington county, complained of by the appellant, is erroneous, and must be reversed and annulled with costs; and that the appellee, Abram Brown, holds the legal title to the said iron ore bank and mineral reservation for the benefit of himself and the said James Brown jointly, and that the said James Brown is entitled to one-half interest in the said property.

The decree is as follows:

This day came again the parties, by their counsel, and the court having maturely considered the transcript of the record of the decree and proceedings aforesaid, and the argument of counsel, is of opinion, for reasons stated in writing and filed with the record, that the appellant, James Brown, is entitled to

one-half interest in the iron ore bank and mineral reservation, and the right of way thereto, conveyed by James Brown, Senior, to the appellee, Abram Brown—it being the same land and right of way and mineral reservation in the bill and proceedings mentioned; and that the said decree of the circuit court of Washington county is erroneous. It is therefore decreed and ordered that the said decree be reversed and annulled; and that the appellant, James Brown, recover against the appellees his costs by him expended in the prosecution of his appeal here.

And this court now proceeding to enter such decree as the said circuit court of Washington county ought to have entered, doth adjudge, order and decree, that the appellees, Abram Brown and William M. Gray, do execute a good and sufficient deed to the said James Brown, conveying to him, the said James Brown, the legal title to an undivided moiety of the said iron ore bank, and mineral reservation and right of way thereto as set forth in the deed from said James Brown, senior, for the same. And it is adjudged, ordered and decreed, that the said appellant, James Brown, do recover of the said Abram Brown, the appellee, his costs by him expended in the said circuit court of Washington county; and leave is given to the said James Brown to apply for such other and further relief in the premises to the said circuit court of Washington county, as may be necessary; which is ordered to be certified to the said circuit court.

DECREE REVERSED.